IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA J. ROSSETTI and<br>EZRA J. ROSSETTI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 21 C 4324 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| HAIM SABAN, individually, and in his official<br>capacity, SABAN CAPITAL GROUP, LLC,<br>SABAN REAL ESTATE, LLC., 601 VAIRO<br>LLC, d/b/a THE BRYN, KATIE LIBERMAN,<br>Individually, and in her official capacity,<br>VALERIE HERRERA, individually and in<br>her official capacity,<br>CARDINAL GROUP HOLDINGS LLC, d/b/a<br>CARDINAL GROUP COMPANIES,<br>CARDINAL GROUP MANAGEMENT<br>MIDWEST, LLC, and ALEX O'BRIEN,<br>Individually and in his official capacity, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiffs Belinda J. Rossetti ("Ms. Rossetti") and Ezra J. Rossetti ("Mr. Rossetti," and together with Ms. Rossetti, "Plaintiffs") bring suit against Defendants Haim Saban, Saban Capital Group, LLC, Saban Real Estate, LLC, 601 Vairo LLC, d/b/a The Bryn, Katie Liberman, Valerie Herrera, Cardinal Group Holdings, LLC, d/b/a Cardinal Group Companies, Cardinal Group Management Midwest, LLC, and Alex O'Brien (together, "Defendants"), purporting to assert the following claims: (I) "740 ILCS 80/3 Illinois Frauds Act"; (II) "815 ILCS 505/ Consumer Fraud and Deceptive Business Practices Act" ("ICFA"); (III) "815 ILCS 510/2 Uniform Deceptive Trade Practices Act" ("UDTPA"); (IV) "18 U.S.C. § 2325 Telemarketing Fraud"; (V) Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a); (VI) "Safety and Risk-

1

Reduction Claims"; (VII) "The Covid-19 Consumer Protection Act" via the FTC Act; (VIII) "18 U.S.C. § 1341 Mail Fraud/Frauds and Swindles"; (IX) "18 U.S.C. § 1343 Wire Fraud"; (X) "18 U.S.C. § 1344 – Bank Fraud"; (XI) "18 U.S.C. § 1349 Attempt and Conspiracy"; (XII) "18 U.S.C. § 1951 Extortion"; (XIII) "Fraud in the Factum"; (XIV) "Fraud in the Inducement"; (XV) "Predatory Advertising and Business Practices"; (XVI) "Plaintiff's Injury"; (XVII) "Illinois Human Rights Act, 775 ILCS 5/101, The Fair Housing Act, 42 U.S.C. [§] 3601 [*et seq.*], Civil Rights Act of 1866, Discrimination Based on Race"; and (XVIII) "18 U.S.C. § 1961-1968 Rico Act."

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (3), and (6). For the following reasons, the Court grants the motion under Rule 12(b)(2) and, alternatively, under Rule 12(b)(3).

## BACKGROUND

The following facts are taken from the First Amended Complaint and are assumed true for the purposes of this motion at this stage of the proceedings. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

Mr. Rossetti is, or was, a student at Pennsylvania State University ("Penn State") located in State College, Pennsylvania. This case stems from Plaintiffs' allegations that Defendants lied on multiple occasions about the conditions of an apartment in an off-campus student apartment community ("The Bryn") in order to induce Mr. Rossetti into signing a lease. Plaintiffs allege that Defendants, through their agents and staff at The Bryn, misrepresented and omitted material information about the condition of Mr. Rossetti's apartment by saying it was cleaned and had up-to-date appliances, when in fact the apartment was filthy and equipped with old, non-working appliances.

In early April 2020, Mr. Rossetti and his mother, Ms. Rossetti, began searching online for student housing in State College, Pennsylvania for the coming academic year. Plaintiffs, who live in Illinois, reviewed the website of The Bryn, which advertised "luxury apartments," "an incredible living experience," "updated appliances," "stress-free student living," and "luxury off-campus student housing near Penn State University." (Am. Compl. ¶ 120, ECF No. 38.) The website also stated, "Your college apartment at The Bryn is more than a home, it's a hub for your social life, a quiet refuge for focus, and space for maintaining health and wellness." (*Id.* ¶ 121.) Plaintiffs reached out to inquire about leasing information for two-bedroom apartments. Plaintiffs spoke to Defendant Katie Liberman ("Ms. Liberman"), the Regional Property Manager, Area Leasing Manager, and Marketing Manager, who claimed that she, Cardinal Group Management Midwest, LLC ("CGMM")—the managing entity of The Bryn—and The Bryn "take COVID-19 seriously and because of that, [they] thoroughly clean every apartment after Residents move out, and perform a deep steam cleaning of all carpets in the apartments," including the apartment that was to be leased to Mr. Rossetti. (*Id.* ¶ 23.) Ms. Liberman told Plaintiffs that it was the normal "standard policy" of The Bryn to thoroughly clean all apartments in between residents. (*Id.* ¶ 41.d.)  Ms. Liberman also told Plaintiffs that the apartment Mr. Rossetti was moving into had "all new and up-to-date appliances," confirming the reference on The Bryn's website which said, "Fully equipped kitchens with updated appliances and plenty of counter space." (*Id.* ¶ 41.f.)

On June 4, 2020, Ms. Liberman warned Plaintiffs that only two of the two-bedroom apartments remained, and Plaintiffs needed to sign a lease immediately to hold the apartment. Sometime between April 7, 2020, and June 15, 2020, Ms. Liberman told Plaintiffs that the full month's rent for August ($824.00) was due immediately to hold the apartment. In reliance on the

information provided regarding the availability and condition of the apartment, on June 15, 2020, Mr. Rossetti signed a lease ("Lease") for the academic school year—August 14, 2020 to July 31, 2021. Ms. Liberman electronically signed the Lease on behalf of CGMM, which was named in the Lease as the "Manager" and "agent" for Defendant 601 Vairo LLC ("601 Vairo"), the "Master Resident Landlord." (Rental Agreement And Lease, Mot. to Dismiss Ex. A, ECF No. 78-1.) That same day, Ms. Liberman told Ms. Rossetti that because Mr. Rossetti signed the lease without a guarantor, he was required to pay the last two month's rent up front ($1,648.00).

After Mr. Rossetti signed the lease, The Bryn's Community Manager, Christy Lee, told Plaintiffs that in fact ten two-bedroom apartments remained. She also informed Plaintiffs that they do not prorate for the month of August, even though Mr. Rossetti was not allowed to move in until August 14, 2020. Ms. Liberman told Plaintiffs that Mr. Rossetti was not allowed to move in until August 14 because the two weeks prior were used to ensure the thorough cleaning of the apartment. Plaintiffs allege that Defendants "forced" Plaintiffs to prepay three months' rent, plus $10 monthly fees for insurance, before Mr. Rossetti could take possession of the apartment. (Am. Compl. ¶ 28, ECF No. 38.)

On August 8, 2020, Mr. Rossetti received an email from The Bryn, stating what they were doing to prepare for incoming residents, including by stating, "Prior to move-in, all units and bedrooms will be professionally cleaned and sanitized with CDC-recommended cleaning agents and disinfectants. . . . Our team has been preparing all summer to ensure all team members have the required resources and knowledge to provide a clean environment at move-in." (*Id*. ¶ 58.) Yet when Mr. Rossetti moved in on August 14, 2021, Plaintiffs discovered that the apartment had not been cleaned and was "not in livable condition." (*Id*. ¶ 30.) The carpets were filthy and black with oil and dirt in many areas. The bathrooms were dirty with old toothpaste,

scum, dried urine, and other foreign material. The bathroom had visible black mold spanning the entire length of the bathroom about three-inches high, seeping out of a "deep crevice." (*Id*. ¶ 50.) After Plaintiffs complained, a maintenance staff member arrived that day and spackled and spray-painted over the mold, telling Plaintiffs it was "safe" to do so. (*Id*. ¶ 51.) He did not remove or treat the mold. Mr. Rossetti's mattress was filthy on both sides, including a urine stain spanning three-fourths of the mattress that was covered in "long mold and 'fibers', approximately 3/8 inches tall." (*Id*. ¶ 53.) Plaintiffs also noted "significant amounts of animal hair" in the apartment, including in the refrigerator—which was the only functioning appliance, aside from the microwave. (*Id*. ¶ 52.) The kitchen was filthy with dried food inside and on the doors of the cabinets and on the stove and oven. The washer, dryer, stove, oven, and dishwasher did not work. The refrigerator and microwave were between 26 and 28 years old. The living room furniture and carpets were filthy with dirt and animal hair. A large vent in the living room wall was "sealed" with dirt and animal hair. (*Id*. ¶ 56.) The complaints in Google Reviews, presumably for The Bryn, "are similar to the horrendous, uninhabitable condition in which the Plaintiffs found the apartment." (*Id*. ¶ 58.d.)

Ms. Rossetti spent two full days cleaning the apartment, including by renting a steam cleaner at Walmart, which caused her "extreme" back pain and leg swelling. (*Id*. ¶ 57.c.) Immediately after moving into the apartment, Mr. Rossetti began to develop a constant and continuous cough for the duration of his residency at The Bryn and from which Mr. Rossetti only found relief when he left the apartment for extended periods. Mr. Rossetti was "forced to evacuate" the apartment on May 9, 2022, due to his constant coughing. (*Id*. ¶ 71.)

Between August 14, 2020, and May 14, 2020, Plaintiffs "complained to Defendants, and were met with additional lies claiming the apartment '*had* been cleaned', they 'forgot to clean',

'maintenance missed that apartment', [and] 'the apartment was cleaned but just not to Plaintiff's standards.'" (*Id*. ¶ 59.) In September 2020, Mr. Rossetti noticed that the maintenance requests he and his roommate had submitted were not being completed but were being marked "completed" and deleted by staff. (*Id*. ¶ 61.) Ms. Rossetti contacted The Bryn by telephone from Illinois on September 20 and spoke to a maintenance staff member taking the call. That staff member said that one of the managers was "leaving" management and had been "deleting a lot of Maintenance Requests" and "other things that may be along the lines of illegal." (*Id*. ¶ 62.a.) When Ms. Rossetti complained that the dryer was 24 or 26 years old even though The Bryn staff claimed the appliances are "up-to-date" and "modern," the staff member replied, "I don't know what they tell people but… I do know that the e-mails that went out were false in a lot of ways, but I don't know who wrote the e-mails. Um, I do know that we don't have a property manager right now, she left." (*Id*. ¶ 62.b.)

On September 22 or 23, Ms. Rossetti contacted The Bryn by telephone from Illinois regarding the deleted maintenance requests. She spoke to Cheyenne Johnson, a Leasing Agent, who said that a lease was signed, so all Ms. Rossetti could do was allow The Bryn to try to repair areas and items in the apartment. Ms. Rossetti responded that The Bryn had committed fraud, significant enough for legal action. That same day Ms. Johnson called Mr. Rossetti at The Bryn and told him that because Ms. Rossetti mentioned possible legal action, they would refuse to speak with Plaintiffs and no repairs would be done in the apartment.

Ms. Rossetti immediately left a voicemail at the Denver office of Defendant Alex O'Brien ("Mr. O'Brien"), Chief Executive Officer ("CEO") of Defendants CGMM and Cardinal Group Holdings, LLC ("CGH")—which she alleges is "fully integrated" with CGMM— explaining Ms. Johnson's statements and Ms. Liberman's "lies and fraud." (*Id*. ¶¶ 12, 64.) Mr.

O'Brien returned Ms. Rossetti's call within twenty minutes and told her the repairs would be completed. Ms. Rossetti stated that she is a paralegal and that she knew she and Mr. Rossetti had been defrauded by the staff at The Bryn. Mr. O'Brien responded, "We certainly don't want anybody talking to a paralegal or an attorney[,]" and "[a]s a Resident, we obviously wanna take care of your son and your needs. It looks like we definitely failed to do that." (*Id*.)

Some repairs and replacement took place over the course of the next months. When testing the stove and oven, one maintenance staff member told Plaintiffs that the owners and management were "all about money" and that it was difficult to get broken appliances replaced. (*Id*. ¶ 67.) At the time Mr. Rossetti moved out, the dishwasher was still broken and had not been repaired or replaced.

On May 2, 2021, Ms. Rossetti sent by e-mail to Mr. O'Brien a "Notice to Vacate and Refund Demand" detailing Mr. Rossetti's intent to move out by May 9, 2021, and demanding a refund of the two months' rent required by Defendants, as well as the prorated amount for August 1 through 13, 2020—the days purportedly used to clean the apartment. (*Id*. ¶ 68.) The Notice also stated Mr. Rossetti was paying May's rent in a prorated amount for only the days Mr. Rossetti would be in the apartment. Catherine Stanton, CGH's General Counsel, replied that the "team managing The Bryn will review your letter with local counsel." (*Id*. ¶ 70.)

Mr. Rossetti moved out on May 9, 2021, and gave his keys to Jullian Lieb, the Assistant Community Manager at The Bryn. Ms. Lieb refused to process Mr. Rossetti as moved out and stated that he must still pay the remaining rent for May, June, and July. Plaintiffs could not find another reasonably-priced apartment, and so Mr. Rossetti returned to Illinois and was "forced" to take online summer classes in lieu of the in-person classes he had planned on. (*Id*. ¶ 74.) Mr.

Rossetti's coughing continued for one week after arriving home to Illinois but ceased permanently thereafter.

On May 12, 2021, Ms. Rossetti sent an e-mail to Defendant Haim Saban ("Mr. Saban")—owner and CEO of Defendants Saban Capital Group, LLC ("SCG") and its subsidiary real estate group, Saban Real Estate, LLC ("SRE")—stating that the staff at The Bryn had defrauded Plaintiffs. Mr. Saban, SCG, and SRE together allegedly own The Bryn. Mr. Saban did not respond, but counsel for The Bryn sent correspondence demanding payment. On May 16, Ms. Rossetti sent a second e-mail to Mr. Saban demanding full reimbursement. Mr. Saban again did not respond.

Plaintiffs filed their amended complaint on March 12, 2022, alleging, among other things, fraud, violation of ICFA and UDTPA, violation of the federal RICO Act, and racial discrimination. For the following reasons, this Court lacks jurisdiction over Defendants and dismisses the case.

## DISCUSSION

Defendants argue a variety of potential issues with Plaintiff's 247-paragraph complaint. The Court begins with the threshold—and ultimately dispositive—issues of subject matter jurisdiction, personal jurisdiction, and venue. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999); *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 639 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 776 (2022); *Hoeller v. Vill. of Barrington*, 619 F. App'x 534, 535 (7th Cir. 2015) ("[W]ithout personal jurisdiction, the court cannot proceed to the merits.").

### I. Rule 12(b)(1)—Subject Matter Jurisdiction

#### A. Legal Standard

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is well-settled that the jurisdiction of the federal courts is limited, and that no presumption of federal jurisdiction exists. *Preston v. Purtrell*, 410 F.2d 234, 236 (7th Cir 1969). A complaint must affirmatively allege such facts as will support the existence of federal jurisdiction. *Id*. Typically, on a Rule 12(b)(1) motion, courts "read a complaint liberally and accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Sapperstein*, 188 F.3d at 855 (citation and internal punctuation omitted).

#### B. Discussion

Plaintiffs' amended complaint purports to assert federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over their state law claims. 28 U.S.C. § 1367. Defendants argue that this case is a lease dispute at heart, and that Plaintiffs' federal claims are so wholly insubstantial and frivolous as to fail to confer federal jurisdiction. *Preston*, 410 F.2d at 236.

As a preliminary matter, Plaintiffs have no power to bring causes of action under the majority of the federal statutes named in the complaint. *See* 15 U.S.C. § 45(a) (no private cause of action); 18 U.S.C. §§ 1341, 1343, 1344, 1349 (no civil remedies); 18 U.S.C. § 1951 (no civil remedies); 18 U.S.C. § 2325 (no civil remedies); *McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555 (7th Cir. 2015) (no private right of action under federal mail fraud statute); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) ("[W]e agree with the Fifth and Sixth Circuits and hold that Congress did not intend to create a private right of action in

enacting either the mail or wire fraud statutes."); *Am. Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992) (no private cause of action for violation of the FTC Act); *Knopp v. Wells Fargo Bank, N.A.*, No. 16 C 2330, 2017 WL 7693399, at *3 (N.D. Ill. Jan. 30, 2017) (no civil remedies under 18 U.S.C. § 1951); *Int'l Tax Advisors, Inc. v. Tax L. Assocs., LLC*, No. 08 C 2222, 2011 WL 612093, at *5 (N.D. Ill. Feb. 15, 2011) (no private cause of action for violation of the FTC Act); *Cole v. Forest Park Sch. Dist. 91*, No. 06 C 1087, 2006 WL 1735252, at *1 (N.D. Ill. June 19, 2006) (no private right of action for bank fraud).

To the extent Plaintiffs attempt to charge Defendants with the crimes enumerated in these statutes, they cannot institute such charges or compel the United States Attorney's Office to do so. *R.S. v. Richard D.*, 410 U.S. 614 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *In re U.S.*, 572 F.3d 301, 312 (7th Cir. 2009) ("The United States Attorney has the ultimate authority to prosecute cases."). Accordingly, for the purposes of considering subject matter jurisdiction, the Court turns to Plaintiffs' federal RICO claim, federal Fair Housing Act ("FHA") claim, and discrimination claims under the Civil Rights Act of 1866, as amended and currently codified in 42 U.S.C. §§ 1981 and 1982.[1]

"Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States." *Bell v. Hood*, 327 U.S. 678, 681 (1946). "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which

---

[1] The amended complaint does not specify under which provisions of the FHA or Civil Rights Act of 1866 Plaintiffs bring their claims. Because there are no allegations of any conduct by any person acting under color of state law, Plaintiffs do not appear to be attempting to assert claims under 42 U.S.C. § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]" (citation and internal punctuation omitted)); *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994).

petitioners could actually recover." *Id*. at 682. Granted, "[a]n alleged claim under § 1331 will be dismissed for want of federal jurisdiction where the claim is wholly insubstantial and frivolous and obviously made for the purpose of securing federal jurisdiction." *Preston*, 410 F.2d at 236. Such a dismissal is not proper, however, where "the complaint does in fact raise serious questions, both of law and fact, which the district court can decide only after it has assumed jurisdiction over the controversy." *Bell*, 327 U.S. at 683–84.

Here, Plaintiffs plainly draw their amended complaint to seek recovery under the RICO Act. It charges, at great length, that Defendants conspired to carry out a fraudulent scheme via the internet, telephone and United States mail to induce Mr. Rossetti into signing a lease, and Ms. Rossetti into making payments, for an apartment that was in an unsafe condition and considerably different than advertised. Whether or not Plaintiffs succeed in stating a claim under the RICO Act depends upon an interpretation of that Act. Plaintiffs also allege federal discrimination claims, albeit in far less detail.[2] Accordingly, this Court has subject matter jurisdiction to consider Plaintiffs' federal claims, *see id*. at 685, and supplemental jurisdiction over their state-law claims under 28 U.S.C. § 1367. The Court need not consider Defendants' argument that Plaintiffs' amended complaint fails to invoke federal-question jurisdiction over state-law claims that implicate significant federal issues. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

---

[2] The Court notes that "all that [is] needed" to adequately plead a discrimination claim is "the type of discrimination that [plaintiff] thinks occurs . . . , by whom . . . , and when[.]" *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

11

## II. Rule 12(b)(2)—Personal Jurisdiction

### A. Legal Standard

A motion to dismiss under Rule 12(b)(2) challenges a court's personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2); *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.,* 440 F.3d 870, 873 (7th Cir. 2006). Once a defendant moves to dismiss under Rule 12(b)(2), the burden is on the plaintiff to establish that the court has personal jurisdiction over that defendant. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997).

Generally, a plaintiff need not include facts alleging personal jurisdiction in their complaint, only a short plain statement on the grounds for the court's subject matter jurisdiction. Fed. R. Civ. P. 8(a); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F. 3d 773, 782 (7th Cir. 2003); *In re Teknek, LLC,* 354 B.R. 181, 190 (Bankr. N.D. Ill. 2006). There are two possible ways in which a court makes factual determinations on a 12(b)(2) motion to dismiss: (1) based on pleadings and other materials submitted in relation to the motion, or (2) through an evidentiary hearing. *Teknek,* 354 B.R. at 190. More commonly, courts make determinations based on pleadings, affidavits and submitted written material alone when there are no material facts disputed and thus no evidentiary hearing is needed. *Id.*; *Purdue Rsch. Found.*, 338 F.3d at 782. In that case, a plaintiff need only meet a *prima facie* standard for purposes of evidence of the court's personal jurisdiction over the defendant and the court must consider all well-pleaded facts as true and resolve all nonmaterial factual disputes in the plaintiff's favor. *Purdue Rsch. Found.*, 338 F.3d at 782–83 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)); *see also Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020). A court need not hold an evidentiary hearing unless there is a dispute of material fact pertaining to personal jurisdiction. *Hyatt*, 302 F.3d at 713.

Here, Plaintiffs submitted exhibits, and Defendants submitted affidavits, in support of their arguments. For the reasons discussed below, there are no disputes of material fact pertaining to personal jurisdiction and so an evidentiary hearing is not needed.

### B. Additional Facts Pertaining to Personal Jurisdiction

The Lease at issue in this case contains the following provision: "This lease is governed by and to be construed in accordance with the laws of the state in which the Property is located, and the ordinances of the city and county in which the Property is located, and any actions brought with respect to this Lease shall be in the courts of such county." (Mot. to Dismiss Ex. A ¶ 15, ECF No. 78.) The apartment is located in Centre County, Pennsylvania.

Plaintiffs are residents of Illinois. Mr. Saban is a resident of California, has never resided in Illinois and has no personal contacts in Illinois. Mr. O'Brien is a resident of Colorado, has never resided in Illinois, has no contacts with Illinois, and has never owned any property in Illinois. Ms. Liberman is a resident of Pennsylvania, has never resided in Illinois, has no contacts with Illinois, has never transacted business in Illinois, and has never owned, operated, or leased any property in Illinois. Defendant Valerie Herrera ("Ms. Herrera") is a resident of California. Between October 2020 and September 2021, she worked as an assistant community manager, property manager, and area manager of The Bryn in Pennsylvania. While in Pennsylvania, she processed payments made by Plaintiffs from Illinois bank accounts. She has never resided in Illinois, has no contacts with Illinois, has never transacted business in Illinois, and has never owned, operated, or leased any property in Illinois.

CGH and CGMM are each incorporated in Delaware, with a principal place of business in Denver, Colorado. Defendants submit an affidavit by Mr. O'Brien, the CEO of CGMM and CGH, swearing that CGH does not maintain, rent, lease operate or own any office, plant or

facility in Illinois; employ any personnel, agents, employees, officers or directors who conduct business in Illinois; have a designated agent for service of process in Illinois; advertise for potential employees in Illinois; have its name with Illinois addresses or telephone numbers appear in print, radio, or television advertising material in Illinois; or publish, or pay to publish, its name or address in telephone books or other similar directories in Illinois. CGH is not registered with the Illinois Secretary of State ("SOS") and does not have any operations in Illinois or specifically recruit employees in Illinois.

The affidavit is silent as to any similar facts respecting CGMM. Plaintiffs submitted a copy of a "Corporation/LLC Search/Certificate of Good Standing" report for the year 2022 from the Illinois SOS website, which states that CGMM's status is "Active" and lists an "Agent" in Springfield, Illinois.[3] Plaintiffs submitted a screenshot of a webpage with the URL "cardinalgroup.com/disclosures-licenses/" which lists CGMM under the subheading "Illinois."

Non-party Adam Chesnoff ("Mr. Chesnoff") submitted an affidavit swearing that he is the President and Chief Operating Officer ("COO") of Defendants SCG and SRE. Mr. Chesnoff further swears that he is an authorized representative of 601 Vairo. 601 Vairo is member managed by its sole member, Casa Student Housing LLC.

SCG and SRE are each incorporated in Delaware with a principal place of business in Los Angeles, California. 601 Vairo is incorporated in Delaware with a principal place of business in State College, Pennsylvania. Neither SCG, SRE, nor 601 Vairo maintain, rent, lease operate or own any property in Illinois; employ any personnel, agents, employees, officers or directors who conduct business in Illinois; have a designated agent for service of process in Illinois; advertise

---

[3] Plaintiff also submitted additional exhibits regarding non-party entities, which are not relevant to the Court's inquiry.

for potential employees in Illinois; have its name with Illinois addresses or telephone numbers appear in print, radio, or television advertising material in Illinois; publish, or pay to publish, its name or address in telephone books or other similar directories in Illinois; are registered with the Illinois SOS or have any operations in Illinois. SRE is not qualified or registered to do business in Illinois. All of 601 Vairo's records, files, and witnesses with information about the facts alleged in the amended complaint are located in Pennsylvania.

Plaintiffs, on the other hand, submitted a "Crain's Chicago Business" article dated January 14, 2013, stating that SCG acquired an office building at 2300 E. Devon Ave. on December 26, 2013 for $39 million.

Plaintiffs also submitted a copy of an Illinois SOS corporation search report for the year 2021, which states that SRE's status is "Withdrawn on Wednesday, 27 October, 2021." It lists an "Agent" in Chicago, Illinois. Mr. Chesnoff avers that the sole reason for SRE's registration in Illinois, which was filed on October 16, 2020, and withdrawn on October 27, 2021, was to enable ADP's administration of Illinois payroll taxes for one SRE employee who worked remotely in Illinois prior to relocating to California in May of 2021. SRE withdrew its Illinois registration when it was no longer necessary. SRE was served in this case on February 10, 2022.

### C. Discussion

#### i. Forum Selection Clause

Defendants first argue that the Court should enforce the forum-selection clause in the Lease at issue, which includes the following provision: "This lease is governed by and to be construed in accordance with the laws of the state in which the Property is located, and the ordinances of the city and county in which the Property is located, and any actions brought with respect to this Lease shall be in the courts of such county." (Mot. to Dismiss Ex. A ¶ 15, ECF No.

78-1.) Defendants point out that the apartment is located in Centre County, Pennsylvania. Plaintiffs do not respond to Defendants' argument.

Personal jurisdiction is waivable and "parties can, through forum selection clauses and the like, easily contract around any rule we promulgate." *TruServ Corp. v. Flegles, Inc.,* 419 F.3d 584, 589 (7th Cir. 2007); *see also IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437, F.3d 606, 610 (7th Cir. 2006). A "forum-selection clause should control unless there is a 'strong showing that it should be set aside.'" *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290-91 (7th Cir. 1989) (citation omitted). There is no contention that the clause is not mandatory. *See Paper Express, LTD. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 756 (7th Cir. 1992) (a forum selection clause is mandatory when the "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive"); *Wors v. Sling Med., Inc.*, No. 10-CV-0106-MJR, 2010 WL 1963201, at *2 (S.D. Ill. May 14, 2010) (enforcing as mandatory a forum selection clause that stated "any litigation that may be commenced by either of the parties . . . with respect to this Agreement shall take place in the state courts of Kansas, in Johnson County").

The question is whether this action is "brought with respect to" the Lease. A substantial part of this action is brought in an effort by Mr. Rossetti to avoid paying outstanding rent due under the Lease and to recover payments he made thereunder. These claims—fraud in the factum, fraud in the inducement, ICFA, UDTPA, and even RICO—are based on certain Defendants' alleged failure to perform under the Lease and plainly "respect" the Lease. *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (affirming dismissal of RICO claim pursuant to forum selection clause in contract at issue); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) ("[A] dispute over a contract

does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance."); *Shulman v. CRS Fin. Servs., Inc.*, No. 03 C 1634, 2003 WL 22400211, at *2 (N.D. Ill. Oct. 21, 2003) (finding ICFA and UDTPA claims were subject to forum-selection clause); *Sompo Japan Ins., Inc. v. Alarm Detection Sys., Inc.*, No. 03 C 2322, 2003 WL 21877615, at *2 (N.D. Ill. Aug. 6, 2003) (same).

Granted, a forum-selection clause can be found invalid if "it can be clearly shown 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Muzumdar*, 438 F.3d at 762 (quoting *The Breman v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)). Mr. Rossetti alleges that the Lease is void due to fraud. However, he makes no allegations or argument that "the forum selection clause was *itself* obtained by fraud." *Id*. (emphasis added); *Miglin v. Mellon*, No. 07 C 6863, 2008 WL 2787474, at *1 (N.D. Ill. July 17, 2008) ("A forum selection clause is invalid only if the clause itself was procured by fraud.").

Mr. Rossetti does not argue that enforcing the forum-selection clause is unreasonable, or that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Heller Financial*, 883 F.2d at 1291 (citations omitted) ("[A]bsent [such a showing,] there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain."). Notably, Mr. Rossetti would have the same opportunity to litigate the merits of his claims in Pennsylvania, and so his substantive rights are not affected by enforcement of the forum-selection clause.

The Court also considers whether it would be unreasonable to enforce the forum-selection clause considering both the federal discrimination claims brought by Mr. Rossetti as well as the claims brought by Ms. Rossetti, who is not subject to the Lease. Courts have refused

to enforce a forum-selection provision where it "would be a pointless waste of judicial resources" to "require piecemeal resolution" of a case in multiple courts. *See, e.g.*, *Pegasus Transp., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574, 577 (N.D. Ill. 1993). There is no risk of piecemeal litigation here, however, because this Court lacks personal jurisdiction over all Defendants and venue is improper in this District for the reasons explained below. The Court accordingly finds that it is not unreasonable to enforce the forum-selection clause with respect to Mr. Rossetti's claims for fraud in the factum, fraud in the inducement, ICFA, UDTPA, and RICO, which are accordingly dismissed.

### ii. Due Process

As for Mr. Rossetti's remaining claims, as well as all claims brought by Ms. Rossetti, this Court lacks personal jurisdiction over Defendants. This case involves claims brought under both federal and state law. In a federal question case, "due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or other geographic area." *United States v. De Ortiz*, 910 F.2d 376, 382 (7th Cir. 1990). Nonetheless, "[t]o determine whether a defendant is amenable to service in a federal question case, [courts] look to the applicable federal statute." *Id.*; Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: . . . (C) when authorized by a federal statute."). "Service of process is how a court gets jurisdiction over the person." *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987). Where the federal statute "does not have a special federal rule for personal jurisdiction [the court] looks to the law of the forum for the governing rule." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), *as corrected* (May 12, 2014).

The federal statutes under which Plaintiffs bring their discrimination claims do not provide for nationwide service of process. *See* 42 U.S.C. §§ 1981, 1982; 42 U.S.C. § 3601, *et seq.*; *Hill v. Consultants in Pathology, S.C.*, 345 F. Supp. 3d 1011, 1015 (N.D. Ill. 2018) (Section 1981 does not authorize nationwide service of process); *Clinton-Brown v. Hardick*, No. 1:20-CV-11694-IT, 2021 WL 1427635, at *3 (D. Mass. Apr. 15, 2021) ("[T]he court's examination of the Fair Housing Act fails to reveal any provision authorizing nationwide service of process."); *cf. Hoeller*, 619 F. App'x at 535 ("§ 1983 does not provide for nationwide service of process[.]").

RICO, however, authorizes nationwide service of process, but only if "it is shown that the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b); *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), *superseded on other grounds by amendment of rule* (finding nationwide service of process under § 1965(b)). "Section 1965(b) authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise." *Lisak*, 834 F.2d at 672.

Here, the Lease at issue in this case involved an apartment at The Bryn, located in Pennsylvania, with a Pennsylvania forum-selection clause. Of the individual Defendants, Ms. Liberman is a resident of Pennsylvania and Ms. Herrera worked at The Bryn at the time in question. Mr. Saban (a California resident) allegedly owns The Bryn, and Mr. O'Brien is the CEO of the managing company for The Bryn. Of the entity Defendants, 601 Vairo has a principal place of business in Pennsylvania, and all of its records, files, and witnesses with information about the facts alleged in the amended complaint are located in Pennsylvania. SCG and SRE allegedly own The Bryn together with Mr. Saban. CGMM, which is allegedly fully integrated with CGH, manage The Bryn. A district court of Pennsylvania would have jurisdiction, and

venue would be proper, whether or not Defendants can be brought before the court in Illinois, so the ends of justice do not require Defendants' presence here. *Id*.

Because § 1965(b) and Rule 4(k)(1) do not authorize nationwide service of process here, Plaintiffs must demonstrate that Defendants could be subject to jurisdiction of the Illinois courts. Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997) (in a federal question case, where the federal statute does not authorize service of process, the court must determine under Rule 4(k)(1)(A) whether the state in which the district court is located is authorized to exercise personal jurisdiction).

To find personal jurisdiction over the nonresident defendant the defendant must have sufficient minimum contacts with the forum state. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir 2010). Exercising personal jurisdiction over a non-resident defendant must comport with the Fourteenth Amendment's Due Process Clause and the forum state's personal jurisdiction statute. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Illinois' long-arm statute goes to the full extent of the Constitution and thus, the Fourteenth Amendment's Due Process Clause. *Tamburo*, 601 F.3d at 700.

There are two ways to establish personal jurisdiction; general jurisdiction or specific jurisdiction. *Id*. at 701. A court may exercise general jurisdiction when the defendant has "'continuous and systematic' contacts with the state in question," or specific jurisdiction "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt*, 302 F.3d at 713 (citation omitted). Plaintiffs' arguments to the contrary notwithstanding, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465

U.S. 783, 790 (1984); *Rush v. Savchuk*, 444 U.S. 320, 331–32, (1980) ("The requirements of *International Shoe*, however, must be met as to each defendant over whom a state court exercises jurisdiction.").

### 1. General Personal Jurisdiction

"A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction is allowed over corporations "when their affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction." *Daimler*, 571 U.S. at 137.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924. For a corporate defendant, "the place of incorporation and the principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (citation omitted). Except in rare cases, only a state of incorporation or a principal place of business will suffice to establish general jurisdiction. *Id.* at 139 (identifying an LLC's state of formation and principal place of business as deciding general jurisdiction); *see also Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (The Supreme Court "has identified only two places where that condition [of being sufficiently at home in a state to establish general jurisdiction] will be met: the state of the corporation's principal place of business and the state of its incorporation."); *Calloway v. AT&T Corp.*, Case No. 18 C 6975, 2019 WL 4694724 at *3 (N.D. Ill. Sept. 26, 2019) ("Outside the typical home

state, that level of activity is rare indeed. How rare? In *Daimler*, the Supreme Court gave this example: a world war forces a foreign company to temporarily relocate its principal place of business to Ohio due to enemy activity abroad." (citing *Daimler*, 571 U.S. at 129 (citing *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 448 (1952)))); *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281 at ¶ 21 (Ill. 2017).

Here, it is clear that none of the Defendants are subject to general jurisdiction in Illinois. As for the individual Defendants, Ms. Liberman is a resident of Pennsylvania, Ms. Herrera and Mr. Saban are residents of California, and Mr. O'Brien is a resident of Colorado. None have any contacts with Illinois. While these individuals do not indicate where they are domiciled, it is clear it is not in Illinois. Plaintiffs nonetheless assert that Mr. Saban acquired property in Illinois in 2013. (Pl.'s Am. Resp. Ex. 1.) But even if true, owning one real property in Illinois ten years ago, which property is "completely unrelated to the plaintiff's cause of action," does not alone support jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 208–09 (1977).

As for the entity Defendants, CGMM and CGH are each incorporated in Delaware, with principal places of business in Denver, Colorado. SCG and SRE are each incorporated in Delaware with a principal place of business in Los Angeles, California. 601 Vairo is incorporated in Delaware with a principal place of business in State College, Pennsylvania.

Plaintiffs asserts that SRE at one point was registered with the Illinois SOS, but the sole reason for that year-long registration was to enable ADP's administration of Illinois payroll taxes for one SRE employee who worked remotely in Illinois prior to relocating to California in May 2021—prior to SRE being served in this lawsuit. Registering to do business alone cannot satisfy the demands of due process for general jurisdiction. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990); *Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, No. 06 C

50197, 2007 WL 7366260, at *4 (N.D. Ill. Aug. 30, 2007). And one employee in the state of Illinois is not enough to meet the high standard of continuous and systematic activity. *Cf. Hayward v. Taylor Truck Line, Inc.*, No. 15-CV-00866, 2015 WL 5444787, at *6 (N.D. Ill. Sept. 14, 2015) (finding 21 Illinois employees, out of 462 total employees, did not establish substantial contacts under *Daimler*).

In short, Plaintiffs fail to show that any Defendant has sufficient contacts so as to render it, him, or her essentially at home in Illinois.

### 2. Specific Personal Jurisdiction

Specific personal jurisdiction "requires that the suit 'arise out of' or 'be related to' . . . minimum contacts with the forum state." *RAR*, 107 F.3d at 1277. "Specific jurisdiction is not appropriate merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state." *Id*. at 1278 (emphasis original) (citation and internal punctuation omitted).

In the context of intentional torts—such as the fraud-based claims alleged here—there are "three requirements for personal jurisdiction . . . : (1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703. "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801. Further, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. "Due

23

process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id*. at 284.

Plaintiffs argue that Ms. Liberman is subject to specific personal jurisdiction in Illinois because she allegedly made false statements to Plaintiffs over the telephone while Plaintiffs were in Illinois to induce Mr. Rossetti into signing the Lease and Ms. Rossetti into paying an amount equaling three months of her son's rent. Inferring in Plaintiffs' favor that Ms. Liberman initiated one or more of those telephone call(s), there are nonetheless no allegations, argument or materials that indicate Ms. Liberman knew Plaintiffs were located in Illinois, let alone that Plaintiffs would be injured there. Any relation between Ms. Liberman and Illinois was "entirely fortuitous, depending wholly on activities out of [Ms. Liberman's] control." *Advanced Tactical Ordnance Sys*, 751 F.3d at 803; *see also Pentwater Equity Opportunities Master Fund, Ltd. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, No. 15-CV-1885, 2016 WL 454342, at *7 (N.D. Ill. Feb. 5, 2016) ("In short, Plaintiffs have failed to establish that Baker knew that the effects of its allegedly tortious conduct would be felt in Illinois. Plaintiffs therefore cannot satisfy the Seventh Circuit's 'express aiming' test and the Court cannot exercise personal jurisdiction over Baker."). This is not a sufficient connection with Illinois itself.

Likewise, Plaintiffs' allegations that they viewed The Bryn's website while they were located in Illinois also shows nothing more than a fortuitous connection with Illinois. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 803 ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" (citation omitted) (cleaned up)).

Plaintiffs next argue that Ms. Herrera processed Plaintiffs' payments, which were made from one or more Illinois bank accounts. But this is not an example of Ms. Herrera reaching out to Illinois or creating a connection with Illinois. *Cf. Walden*, 571 U.S. at 291 (the fact that funds originated in Nevada and were eventually returned to plaintiffs in Nevada were not connections to Nevada created by defendant).

Finally, Mr. Rossetti alleges that after signing the Lease, on August 8, 2020, while in Illinois he received a welcome email from The Bryn containing false statements about what they were doing to prepare for residents. Even assuming arguendo that he relied on this email to his detriment, the allegations are insufficient to support personal jurisdiction for any Defendant. Not only is it unknown who sent the email, but there is nothing indicating it was targeted at Illinois. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 803 ("The connection between the place where an email is opened and a lawsuit is entirely fortuitous.").

As for the other Defendants, Plaintiffs put forth no indication that they are connected to Illinois in any way in relation to this lawsuit. Those Defendants, on the other hand, have submitted undisputed evidence that they have no contacts with Illinois. Accordingly, Plaintiffs have failed to show that any of the Defendants are subject to specific personal jurisdiction here.

This case is accordingly dismissed without prejudice—in the alternative for those claims already dismissed pursuant to the forum-selection clause—for lack of personal jurisdiction over all Defendants. *Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 577 (7th Cir. 2022) (dismissals for lack of personal jurisdiction are necessarily without prejudice).

### III.     Rule 12(b)(3)—Venue

#### A.  Legal Standard

A Rule 12(b)(3) motion challenges the propriety of venue in this District. Fed. R. Civ. P. 12(b)(3). Plaintiffs bear the burden of establishing that venue is proper. *Interlease Aviation Investors v. Vanguard Airline, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003). "Except as otherwise provided by law[, . . . a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(a), (b). RICO, which "otherwise provide[s]", permits venue to be laid in "any district in which such [defendant] resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a).

#### B.  Discussion

Plaintiffs fail to establish that venue is proper in this District. Plaintiffs do not establish that all Defendants are residents of Illinois, and so subsection (b)(1) is inapplicable. 28 U.S.C. § 1391(b)(1). And it cannot be said that a "substantial part of the events . . . giving rise to the claim occurred" in Illinois, 28 U.S.C. § 1391(b)(2), when the apartment at issue is located in Pennsylvania, the Lease contains a Pennsylvania forum-selection clause, 601 Vairo's records, files, and witnesses with information about the facts alleged in the amended complaint are located in Pennsylvania, no Defendant is subject to personal jurisdiction in this Court, and the only tenuous contacts with Illinois are a handful of emails and telephone calls made or received by Plaintiffs in Illinois.

And even if under RICO a Defendant "transacts his affairs" in Illinois, Plaintiffs still must show that "the interests of justice require" he be haled into this Court. 18 U.S.C. § 1965(b); *Lisak*, 834 F.2d 668, 672. For the reasons explained above with respect to personal jurisdiction, the interests of justice do not so require. *Supra*. Accordingly, this case is alternatively dismissed for improper venue. *Hoeller*, 619 F. App'x at 535. The Court declines to consider Defendants' remaining arguments on standing and the merits.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [78] is granted under Rule 12(b)(2) for lack of personal jurisdiction and, alternatively, under Rule 12(b)(3) for improper venue. This case is dismissed. Civil action terminated.

**SO ORDERED.**                                      **ENTERED: September 11, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**